S. Samuel Di Falco, S.
The following rulings are made upon the objections filed to the account of the executor.
The first objection is sustained in part. The third paragraph of the will reads: ‘ ‘ It is my desire and I direct my executor to retain the services of my brother, Oscar Isaacson, to manage, sell, lease or otherwise dispose of the business, inventory, fixtures and goodwill which I maintain ” at a stated address. It says that for such services as he “ shall perform in connection with said business, he shall be paid five per cent (5%) of the proceeds from the net income or capital received from the * * * sale * * * of said business. ” The objectant, acting under the terms of the will and prior to the issuance of letters testamentary, produced a purchaser and the business was ultimately sold to that purchaser upon the terms originally agreed upon by the objectant and the purchaser. The executor contends that the text of the will is merely precatory, that the objectant was not in fact retained by the executor, and that in any event, the 5% commission should apply to the proceeds only after all debts relating to the business had been subtracted therefrom.
The instructions to retain the objectant are not merely precatory. The testator commanded the executor to retain him to sell or dispose of the business. If it came to pass that the objectant could not produce a purchaser or that the executor could obtain a better price than from the objectant’s bidder, there might be *368 some question of his right to compensation. In point of fact, the business was sold to the person produced by the objectant and upon the terms agreed upon between them. Under the terms of the will, the objectant is entitled to the compensation stated.
The will fixes the compensation at 5% of the proceeds from the “ net income or capital ” received from the sale. It will be noted that the word ‘ ‘ net ’ ’ is used immediately before the word “ income ”. The will says “ net income or capital.” It does not say “ net capital.” The objectant was to have authority to manage or lease the business as well as to dispose of it. In the case of management or lease, his commission was to depend upon the net income. In the case of a sale it was to be based upon the capital received. However, even if the word 1 ‘ net ’ ’ is intended to modify “ capital ”, as well as “ income ”, fairly construed, it must mean the sum actually paid to the executor for the business, less the actual expenses of the sale. The purchaser paid the sum of $15,000. There were no expenses of sale or other deductions.
It could not have been the testator’s intent that all bills relating to the business, including the cost of all goods purchased for the business and services rendered in the business, should be deducted from the amount paid for the business in order to arrive at a net capital sum. Had that been the testator’s intent he would have spoken of the “profits ” from the business rather than the “proceeds from the * * * capital received from the * * * sale.” There is no charge that the objectant had inordinately increased the value of the business by large and unnecessary purchases prior to the sale. On the contrary, the sale was consummated very soon after the decedent’s death and before any change in the conduct of the business could occur. A fair construction of the will requires the executor to pay to the objectant 5% of $15,000, which was the sum received from the sale of the business.
The objectant is not, however, entitled to a commission for the sale of the realty. The will explicitly says that the authority to manage, lease or sell the business “ shall not extend to nor include the real property ” in which the business was conducted. It was stated at the hearing that the purchaser of the business was insistent upon one “ deal ”, including the store and the business. The instrument relating to the sale of the business, however, took into account the possibility that the realty would not be sold to the purchaser of the business and made provision for a lease. The objectant, notwithstanding his complete lack of authority to do any act with respect to the real property, entered into agreements for the sale of the business and the realty. The *369 terms of the will were disclosed to the purchaser and his attorney, and they were thus informed of the limits of his authority. Formal contracts were subsequently executed by the executor, although it is not disputed that the terms of the contract for the sale of the realty were not materially different than originally agreed upon by the objectant and the buyer. The executor testified that there was some question in his mind about going through with the sales, but inasmuch as the purchaser was in possession of the store when letters were issued and there was, therefore, no opportunity to check the stock or books or otherwise interfere, the executor decided to accept the offers. In connection with the sale of the realty, the objectant had no authority under the will or from the executor. He was a mere volunteer. Under the authority that he did possess, he produced a purchaser who wished to purchase an additional asset. The objectant had no authority to sell that property. The sale had to await the executor’s action. The objectant is not entitled to the compensation demanded by him for sale of the realty.
The second objection is dismissed for failure of proof.
The third objection is disposed of by agreement of the parties. It is agreed that the figure of $159.80 in Schedule A-2 is correct. In an effort to settle the other objections, various adjustments have been agreed upon by the parties.
The fourth objection has been adjusted. It is agreed that against the figure of $1,337.47 as reported in Schedule B-l, the objectant should be credited with $500, $85, $231.25, $100, $150 and $27.36, making a total of $1,093.61. This would leave a balance of $243.86 which the objectant holds for the estate. Originally it had been agreed that the objectant would be entitled to a total credit of $1,122.61, subject to confirmation, but at the adjourned hearing a credit of $114 was reduced to $85. It had also been stated that he would be credited with $23.75 and $76.36, but at the adjourned hearing it was stated that the first mentioned item was reflected in the account and the estate agreed only to the net figure of $243.86.
The fifth objection has been adjusted by agreement of the parties. It is agreed that there shall be eliminated from Schedule C the item of $32.25 relating to the automobile and that the sum of $5 shall be charged against the share of the sister. It is agreed that the items of $59.66 and the item of $35 shall also be charged against the sister’s share. In Schedule C-l the item of $125 is withdrawn. The item of $100 is reduced to $50. The objection to the attorney’s fee is overruled. The charge that the attorney had agreed to perform all legal services without fee is unfounded. No proof has been offered to support the charge. *370 The court holds that the sum of $1,900 is reasonable and that the attorney is entitled to payment of that sum.
The sixth objection is overruled. There is no proof that the executor agreed to render services without compensation. The item of $125 in Schedule D-2 is not properly a part of that schedule. The same item was eliminated by agreement from Schedule C-l.
The seventh objection is to the claim of the decedent’s sister for recovery of money loaned to the decedent. Insofar as the objection is to the loan itself, it has been withdrawn. Concededly, the decedent borrowed the stated sum from his sister. Objection to payment of interest on the loan remains. It is overruled. The court finds that the decedent, at the time of the loan, agreed to pay interest at the rate of 4%. Periodic payments were made on the loan by the decedent. These payments were credited to principal.
It is conceded that in 1951, the sister returned to the decedent a check in the sum of $80 which he had sent her. That sum was 4% of the original sum borrowed. The decedent’s periodic repayments did not begin until April, 1957. The argument is made that the sister intended to refuse all interest payments and thus to modify the original agreement. There is no evidence of any intent to modify the agreement to pay 4% interest on the loan. On the contrary, the testimony shows that the decedent reiterated his promise to pay the interest and that the payment was not refused, but rather his time for payment was extended. The executor, therefore, properly paid interest on the loan. It is not suggested that there is any error in the computation of the interest paid to the claimant.
The eighth objection has become academic by reason of the payment and acceptance of the partial distribution. The ninth, tenth and eleventh objections are merely predicated upon earlier objections, raise no new issue and require no ruling. The twelfth objection is dismissed.
The objectant concededly holds the sum of $500 paid by the purchaser of the business and realty and the further sum stated in Schedule B-l with the credits stated above. These sums are to be set off against the commission due him on the sale of the business. The computation of commissions and all questions relating thereto are reserved for decision on the settlement of the decree.